## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **MONIQUE BURGESS,** | **Case No. 1:24-cv-01217-PAB** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **GREATER CLEVELAND REGIONAL TRANSIT AUTHORITY,** | **MEMORANDUM OPINION & ORDER** |
| **Defendant.** | |

Pending before the Court is Defendant Greater Cleveland Regional Transit Authority's ("Defendant" or "GCRTA") Motion to Dismiss ("Motion") Plaintiff Monique Burgess's ("Plaintiff" or "Burgess") Complaint.  (Doc. No. 6.)  For the following reasons, GCRTA's Motion is DENIED.

## I.    Factual Allegations

Burgess sets forth the following factual allegations in her Complaint. (Doc. No. 1.)

GCRTA is a regional transit authority that does business in the Northern District of Ohio.  (*Id.* at PageID #1.)  Burgess resides in Cuyahoga County, Ohio and was at all relevant times employed by GCRTA as a rail operator.  (*Id.* at PageID #1–2.)  GCRTA operates three rail lines: the Blue line, the Green line, and the Red line.[1]  (*Id.* at PageID #2.)  At all relevant times, Burgess has operated trains on the Blue line and/or Green line.

---

[1] According to Burgess: the Blue line runs along Van Aken Boulevard between Chagrin Boulevard and Tower City; the Green line runs along Shaker Boulevard between Green Road and Tower City; and the Red line runs between East Cleveland to the airport.  (Doc. No. 1 at PageID #2.)  GCRTA refers to the Blue and Green lines as "light rail," and to the Red line as "heavy rail."  (*Id.*)

Burgess suffers from an overactive bladder and sickle cell anemia, a disease associated with overactive bladder, as well as a host of other medical issues.  (*Id.*)  Burgess alleges that her "physical impairment … substantially limits the major life activity of urinary and bladder functioning."  (*Id.* at PageID #4.)

According to Burgess, GCRTA provides one unisex restroom near the rotunda lobby of the Tower City station for use by rail operators, bus drivers, booth attendants, and security officers.  (*Id.* at PageID #2.)  The rotunda lobby restroom has one toilet and one urinal for use by only one person at a time.  (*Id.*)  Burgess alleges that "[t]here is often a line of employees waiting to use that restroom, which makes it impossible for [her] to have sufficient time to relieve herself using that restroom and keep to GCRTA's rail schedule."  (*Id.*)

Burgess alleges that "[o]n August 17, 2022 and several times thereafter, [Burgess] requested as a disability accommodation the option of using a restroom located just past the entrance to the Red line, inside space used as an office by the Customer Service Supervisor (the customer service restroom)."  (*Id.* at PageID #3.)  According to Burgess, "GCRTA refused [her] request to be able to use the customer service restroom as an accommodation for her disability, and has failed to provide any reasonable accommodation."  (*Id.*)

Burgess alleges that "since 2011, [she has] performed the essential functions of her position," and that she is "otherwise qualified for and can perform the essential functions of her Rail Operator position with or without reasonable accommodation."  (*Id.* at PageID #4.)

## II.    Procedural History

On or about November 17, 2022, Burgess "timely filed a Charge of Discrimination with the Ohio Civil Rights Commission (the 'OCRC') based on GCRTA's refusal to accommodate her

disability." (*Id.* at PageID #3.)  On or about January 11, 2024, the OCRC issued to Burgess a Notice of Right to Sue. (*Id.*)  On April 19, 2024, the Equal Employment Opportunity Commission ("EEOC") issued a Notice of Right to Sue. (*Id.*)

On July 17, 2024, Burgess filed her Complaint against GCRTA. (Doc. No. 1.)  Therein, Burgess alleges three claims under: (i) Title I of the Americans with Disabilities Act ("ADA"); (ii) Section 504 of the Rehabilitation Act ("Section 504"); and (iii) Ohio Revised Code § 4112.02. (*Id.*)  On November 15, 2024, GCRTA filed a Motion to Dismiss. (Doc. No. 6.)  On January 15, 2025, Burgess filed her Opposition to GCRTA's Motion ("Opposition"). (Doc. No. 8.)  On January 29, 2025, GCRTA filed its Reply in Support of its Motion ("Reply"). (Doc. No. 9.)  Accordingly, GCRTA's Motion is ripe for review.

## III.  Standard of Review

GCRTA moves to dismiss all of Burgess's claims as asserted against it under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) challenges the subject-matter jurisdiction of the court. *See* Fed. R. Civ. P. 12(b)(1).  "The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction." *See Admiral Ins. Co. v. Fire-Dex, LLC*, 2022 WL 16552973 at *3 (N.D. Ohio Oct. 31, 2022), *aff'd*, 2023 WL 3963623 (6th Cir. June 13, 2023).  "Where there is a facial attack on the pleadings for lack of standing … 'we must accept the allegations set forth in the complaint as true, drawing all inferences in favor of the plaintiff.'" *Mosley v. Kohl's Department Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019).

Pursuant to Rule 12(b)(6), the Court accepts Burgess's factual allegations as true and construes the Complaint in the light most favorable to Burgess. *See Gunasekera v. Irwin*, 551 F.3d

3

461, 466 (6th Cir. 2009).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the complaint raises a right to relief above the speculative level— "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'"  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 679.

Consequently, the examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (internal quotation marks omitted). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 679.

4

## IV.    Analysis

### A.    Documents Attached to Motion

As a preliminary matter, the Court first addresses the documents attached to GCRTA's Motion.

In its Motion, GCRTA attaches numerous documents, including what appear to be letters from the OCRC and EEOC, Burgess's discrimination complaints, GCRTA's OCRC position statement, a letter to Burgess from a senior manager in GCRTA's office of equal opportunity, and a letter from Burgess's counsel to GCRTA.  (*See* Doc. Nos. 6-1, 6-2, 6-3, 6-4, 6-5, 6-6.)  GCRTA asserts that the Court may properly consider these materials "as they are either referenced in or incorporated by reference in Plaintiff's Complaint, central to its allegations, are public records, or are properly reviewable upon judicial notice."  (Doc. No. 6 at PageID #40.)

In her Opposition, Burgess contends that GCRTA "does not advance any arguments whatsoever as to why those documents tend to show Plaintiff has failed to state a claim" and are "completely irrelevant to the motion to dismiss."  (Doc. No. 8 at PageID #76.)  Burgess also argues that many of the documents constitute hearsay or were written by GCRTA's in-house attorneys.  (*Id.*)

In its Reply, GCRTA reiterates that it is a "well-settled rule" that a court may consider such documents in ruling on a motion to dismiss.  (Doc. No. 9 at PageID #90–91.)  GCRTA asserts that it is a political subdivision, and thus, that its records (i.e., the attached documents) qualify as public records.  (*Id.* at PageID #91.)  GCRTA thus contends that such documents "utterly discredit" Burgess's "borderline frivolous claims," and that Burgess has "failed to plausibly allege that GCRTA engaged in some secret crusade to target her because of her claimed incontinence issues, which she has provided zero evidence that this rises to the level of an ADA 'disability.'"  (*Id.*)

5

In ruling on a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430; *see also Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018). However, when a court takes judicial notice of matters outside the pleadings, it may only consider the existence of these documents but not the truth of the specific factual allegations contained therein, as such factual allegations are subject to reasonable dispute. *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467 (6th Cir. 2014) ("Federal Rule of Evidence 201 allows a court to take notice of facts not subject to reasonable dispute. Under this standard, we could take notice only of the fact that [defendant] filed the [document] and what that filing said, but we could not consider the statements contained in the document for the truth of the matter asserted, even at the motion-to-dismiss stage."); *see also Baskin v. United States*, 2022 WL 19558028, at *5–6 (N.D. Ohio Nov. 3, 2022) (Barker, J.).

Here, the Court finds that GCRTA improperly attempts to rely on the documents attached to its Motion for the truth of the matter asserted. GCRTA does not advance any arguments related to the existence of the documents—for example, whether Burgess had presented her claims before the OCRC or EEOC, which could be supported by the existence of the various documents. Rather, GCRTA relies on the documents entirely for the truth of the statements contained therein. This includes citing to documents prepared by GCRTA's own attorneys or employees in an attempt to: (i) refute Burgess's allegation that her "urologist, Dr. Sanford Luria, confirm[ed] Ms. Burgess has a disability" by citing to hearsay testimony contained in GCRTA's position paper (*see* Doc. No. 6 at PageID #38; Doc. No. 9 at PageID #91–92); (ii) argue that Burgess's concerns can be adequately

6

addressed by existing "Code-10" procedures,[2] despite such procedures not being referenced in the Complaint (*see* Doc. No. 6 at PageID #38); (iii) dispute as a factual matter how many restrooms Burgess has access to (*see id.*).  GCRTA's reliance on these documents for the truth of the statements included therein is inappropriate and will not be considered in evaluating its Motion to Dismiss.

Moreover, the cases cited by GCRTA are distinguishable.  Many of the cases cited by GCRTA involve attaching a contract, policy, or agreement at issue in the complaint, as courts routinely permit the actual language of an agreement to be considered on a 12(b)(6) motion.[3]  The remaining cases cited involve taking judicial notice of public record documents compiled in other court proceedings.[4]  For example, in *Clark v. Stone*, 998 F.3d 287, 297 (6th Cir. 2021), the court considered certain documents relating to underlying abuse cases that impacted the claims at issue.  Even then, however, the court explicitly noted that those exhibits were only considered to "speak to the existence of that investigation and the events that took place," and *not* as "evidence of whether [plaintiffs'] First, Fourth, and Fourteenth Amendment rights had been violated."  *Id.*  In short, those cases are vastly different from the present case, in which GCRTA asks this Court to consider documents prepared by

---

[2] In its Motion, GCRTA explains that a "Code 10" request can be called over the radio, which "informs GCRTA transit dispatch of an operator's urgent need to use a restroom outside of their regularly scheduled break times."  (Doc. No. 6 at PageID #38.)  Following a Code 10 request, GCRTA indicates that its "dispatch center will then endeavor to accommodate the Code 10 request by arranging for a replacement train operator to get to the schedule 'Code 10' location, so that the train can continue on time and on schedule."  (*Id.*)

[3] *See, e.g.*, *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (attaching life insurance policies); *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp.2d 718, 721 (6th Cir. 2003) (attaching development agreement); *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (attaching plan documents); *Whittaker v. Deutsche Bank Nat. Trust Co.*, 605 F. Supp.2d 914, 925 (N.D. Ohio 2009) (attaching documents related to mortgage loans); *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673 (6th Cir. 2011) (attaching documents related to compost management plan).

[4] *See, e.g.*, *Gavitt v. Born*, 835 F.3d 623, 643 n.4 (6th Cir. 2016) (considering "public record compiled in state court when [the plaintiff] sought relief from judgment"); *Clark v. Stone*, 998 F.3d 287, 297 (6th Cir. 2021) ("Courts may take judicial notice of the proceedings of other courts of record.").

its own attorneys and employees for the truth of the matters asserted.  That is inappropriate at this stage.[5]  *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d at 467.

Accordingly, the Court declines to consider the documents attached to GCRTA's Motion.  At this stage, Burgess is entitled to have her factual allegations taken as true and her Complaint construed in the light most favorable to her.  *See Gunasekera*, 551 F.3d at 466.  The parties will have the opportunity to challenge the sufficiency of the evidence at the summary judgment stage.

**B.     Standing**

The Court next turns to the issue of standing.

In its Motion, GCRTA argues that Burgess has no standing to bring her claims for lack of injury and redressability.  (Doc. No. 6 at PageID #40.)  GCRTA contends that Burgess's "irrational fear of incontinence while on the job is not an 'injury in fact' sufficient to convey Article III standing." (*Id.* at PageID #41.)  Further, GCRTA asserts that Burgess's claim is "speculative and not redressable by the Court."  (*Id.*)

In her Opposition, Burgess maintains that she has alleged standing.  (Doc. No. 8 at PageID #83.)  Burgess first asserts that she has alleged an injury in fact by the denial of a legal right to an accommodation that has caused her emotional distress, mental anguish, humiliation and embarrassment.  (*Id.*)  Burgess also contends that this injury is causally connected to GCRTA as it was caused by its "own conduct, not some third party's conduct."  (*Id.* at PageID #84.)  Finally,

---

[5] Finally, the Court's conclusion is not changed by GCRTA's assertion that it is a political subdivision of the state of Ohio.  (*See* Doc. No. 9 at PageID #91.)  For even if the Court found that all of the attached documents were considered "public record" documents, the Court would still only take judicial notice of the fact that the documents were filed with the OCRC and EEOC—not the truth of the matters contained in GCRTA's position statements.  *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d at 467.

8

Burgess argues that the injury is redressable because the Court could enjoin GCRTA from engaging in unlawful employment practices and award compensatory damages.  (*Id.*)

In its Reply, GCRTA reiterates that a "generalized fear of incontinence" does not confer Article III standing.  (Doc. No. 9 at PageID #93.)  GCRTA also asserts that Burgess has not explained why her allegations that she might "suffer a bout of 'overactive bladder' urgency that cannot be adequately addressed by existing 'Code-10' procedures, or at existing public/private facilities before or after a shift, should form the basis of a federal claim."  (*Id.* at PageID #93–94.)  Accordingly, GCRTA submits that Burgess wholly fails to address GCRTA's standing arguments.  (*Id.* at PageID #94.)

"To satisfy Article III standing, the plaintiff must demonstrate that (1) he or she suffered an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'; (2) the injury is 'fairly traceable to the challenged action of the defendant'; and (3) it is likely 'that the injury will be redressed by a favorable decision.'"  *Mosley*, 942 F.3d at 756.  "An injury is 'particularized' if it 'affect[s] the plaintiff in a personal and individual way.'"  *Id.* at 757.  "[A]t the pleading stage, a plaintiff need only demonstrate a plausible entitlement to standing."  *Hile v. Michigan*, 86 F.4th 269, 274 (6th Cir. 2023) (citing *Ass'n of Am. Physicians & Surgeons v. U.S. FDA*, 13 F.4th 531, 543–44 (6th Cir. 2021)).

The Court finds that Burgess has sufficiently pled facts at this stage to plausibly allege standing.  Specifically, Burgess alleges that "GCRTA provides one unisex restroom near the rotunda lobby of the Tower City station for use by rail operators, bus drivers, booth attendants, and security officers."  (Doc. No. 1 at PageID #2.)  Burgess also alleges that the "rotunda lobby restroom has one toilet and one urinal for use by only one person at a time," and that as a result, "[t]here is often a line

of employees waiting to use that restroom." (*Id.*)  Burgess next alleges that she "suffers from an overactive bladder and sickle cell anemia, a disease associated with overactive bladder, as well as a host of other medical issues." (*Id.*)  The line of employees at the one unisex restroom thus "makes it impossible for Ms. Burgess to have sufficient time to relieve herself using that restroom and keep to GCRTA's rail schedule." (*Id.*)  Finally, Burgess alleges that she "requested as a disability accommodation the option of using a restroom located just past the entrance to the Red line," but that "GCRTA refused [her] request to be able to use the customer service restroom as an accommodation for her disability, and has failed to provide any reasonable accommodation." (*Id.* at PageID #3.)

These allegations are sufficient to "demonstrate a plausible entitlement to standing." *Hile*, 86 F.4th at 274.  First, Burgess has pled a particularized injury because the alleged ADA violation "makes it impossible for [her] to have sufficient time to relieve herself using that restroom and keep to GCRTA's rail schedule," which has allegedly caused Burgess "emotional distress, humiliation and embarrassment."[6]  (Doc. No. 1 at PageID #2, 6); *see also Mosley*, 942 F.3d at 757 (finding that it was "reasonable to infer at this stage" that barriers of accessibility to restroom could create standing for ADA claim based on the denial of equal use and enjoyment of premises").  Second, Burgess's alleged

---

[6] GCRTA argues that the description of Burgess's injury is vague and "would encompass everything from mild temporary discomfort to actual incidents of urinary incontinence." (Doc. No. 6 at PageID #45.)  In her Complaint, Burgess alleges that it is "impossible for [her] to have sufficient time to relieve herself using that restroom and keep to GCRTA's rail schedule," which has allegedly caused Burgess "emotional distress, humiliation and embarrassment." (Doc. No. 1 at PageID #2, 6.)  The Court finds that these allegations can be construed as plausibly alleging an injury to Burgess due to her being unable to relieve herself.  And the mere fact that Burgess's Complaint is open to multiple interpretations as to exactly whether that occurred through "actual incidents of urinary incontinence" or "discomfort" from being unable to relief herself does not change this conclusion, because: (i) either-or could support an injury; and (ii) the fact that a Complaint is open to multiple interpretations does not necessarily equate to implausibility, particularly given that Burgess is entitled to have her Complaint construed in the light most favorable to her as the non-moving party.  *See Burgess v. City of Cleveland*, 2025 WL 1756491, at *49 n.76 (N.D. Ohio June 24, 2025) (Barker, J.) (multiple interpretations did not result in implausibility at motion to dismiss stage).

10

injury is fairly traceable to the challenged action of GCRTA based on GCRTA's alleged lack of sufficient restrooms and reasonable accommodations for Burgess associated therewith.  Finally, it is likely that Burgess's injury would be redressed by a favorable decision because "[i]f a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury."  *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 381 (2024).

Moreover, GCRTA's arguments to the contrary are unavailing.[7]  First, GCRTA cites to *Jordan v. Joe B. Beasley & Associates, L.P.*, 2024 WL 4710157 (6th Cir. Nov. 7, 2024), for the proposition that it is not enough to have "merely encountered an ADA violation" because a plaintiff must allege facts plausibly showing that the "alleged violation of the ADA will cause him a concrete injury in the near future."  (Doc. No. 9 at PageID #93.)  Yet *Jordan* is factually distinguishable from the present case.  In *Jordan*, the plaintiff encountered certain architectural barriers while visiting a property.  2024 WL 4710157, at *2.  However, the court explicitly noted that the plaintiff's complaint did not include any allegations that such architectural barriers had an impact on him.  *Id.*  Specifically, the court found that the complaint: (i) "d[id] not allege that he faced serious difficulty when parking his vehicle"; (ii) "d[id] not suggest that he experienced physical disability in ambulating through the parking lot"; (iii) "d[id] not suggest that he experienced physical difficulty in ambulating through the

---

[7] GCRTA also argues that "Burgess has not explained why her mere allegation that she might suffer a bout of 'overactive bladder' urgency that cannot be adequately addressed by existing 'Code-10' procedures, or at existing public/private facilities before or after a shift, should form the basis of a federal claim."  (Doc. No. 9 at PageID #93–94.)  First, the Court declines to address these arguments because they are based upon materials outside the pleadings, by which GCRTA attempts to rebut Burgess's factual allegations based upon documents created by its employees and attorneys.  As explained above, the Court finds that such is inappropriate at the motion to dismiss stage.  *See supra* Section IV.A.  Nevertheless, the Court briefly notes that Burgess's Opposition does address the existing public/private facilities as Burgess argues that "they are too far away for rail operators to use and keep to the schedule."  (Doc. No. 8 at PageID #82.)

parking lot"; and (iv) "d[id] [not] claim that the barriers affected his financial concerns." *Id.* In short, the plaintiff's complaint was totally devoid of any allegations that the ADA violations had any impact on him beyond merely encountering them. *See id.* In fact, the plaintiff even confirmed this at oral argument.[8] *See id.* By contrast, Burgess's Complaint includes allegations that the alleged ADA violation "makes it impossible for [Burgess] to have sufficient time to relieve herself using that restroom and keep to GCRTA's rail schedule" in light of her "overactive bladder and sickle cell anemia … [and] host of other medical issues," thereby causing her "emotional distress, humiliation and embarrassment." (Doc. No. 1 at PageID #2, 6.) Unlike *Jackson*, where the plaintiff merely observed certain violations in a parking lot that had zero impact on him, Burgess here sufficiently alleges that the alleged ADA violation has caused, and will continue to cause, her to suffer a concrete injury. *See Jordan*, 2024 WL 4710157, at *2.

Accordingly, the Court finds that Burgess has alleged facts sufficient to "demonstrate a plausible entitlement to standing" at this stage. *Hile*, 86 F.4th at 274.

### C. Discrimination Claims under ADA, Section 504, and O.R.C. § 4112.02

The Court next turns to Burgess's discrimination claims under the ADA, Section 504, and § 4112.02. "Claims of disability discrimination under the ADA, the Rehabilitation Act of 1973, and Ohio law are all subject to the same analysis." *Braud v. Cuyahoga Valley Career Center*, 2007 WL 2816210, at *5 n.1 (N.D. Ohio Sept. 27, 2007) (citing cases); *see also Hazen v. Cleveland Clinic Foundation*, 2022 WL 3083027, at *4 (N.D. Ohio July 29, 2022) (Barker, J.) ("Both federal and Ohio

---

[8] Specifically, during oral argument before the district court, the plaintiff was asked "how, if at all, the physical barriers 'affected' him," to which the plaintiff replied: "Your Honor, that is not in the Complaint." *Jordan*, 2024 WL 4710157, at *2.

discrimination actions require the same analysis.").  Accordingly, the Court will analyze Burgess's claims together.

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  An employer discriminates under the ADA when it does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A).

> To assert a failure to accommodate claim, Plaintiffs must plausibly allege that they are (1) disabled, yet (2) otherwise qualified for the position despite their disability: (a) without accommodation from the employer; (b) with an alleged essential job requirement eliminated; or (c) with a proposed reasonable accommodation; (3) that their employer was aware of their disability; (4) that they requested an accommodation; and (5) that their employer failed to provide the requested reasonable accommodation.

*Schobert v. CSX Transp. Inc.*, 504 F. Supp. 3d 753, 791-92 (N.D. Ohio 2020) (citing *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811 (6th Cir. 2020)).

### 1.    Existence of Disability

The parties first dispute whether Burgess has alleged a disability.

In its Motion, GCRTA argues that Burgess's "overactive bladder" is not a plausible ADA disability.  (Doc. No. 6 at PageID #44.)   GCRTA contends that Burgess fails to provide any information about her claimed incontinence, only noting that she "suffers from an overactive bladder."  (*Id.*)  GCRTA asserts that this is not specific enough as "over half of women over age 50

13

sometimes experience incontinence,"[9] and cites to cases where urinary incontinence was insufficient to support a claim because the plaintiff failed to demonstrate that it "substantially, or to a large degree, limited [the plaintiff's] life activit[ies]."  (*Id.* at PageID #37, 44.)  Finally, GCRTA maintains that Burgess has failed to elaborate on why she cannot make use of the other restroom options while at Tower City.  (*Id.* at PageID #45.)

In her Opposition, Burgess submits that she has a disability.  (Doc. No. 8 at PageID #78.) Burgess argues that determining whether a person has a disability involves a three part test: (i) whether the person has a physical or mental impairment; (ii) whether the person's proposed life activity fits the definition of a "major life activity" under the ADA; and (iii) whether the person's impairment substantially limits their major life activity.  (*Id.* at PageID #77–78.)  Applying this test, Burgess asserts that courts have found sickle cell anemia to be a physical impairment.  (*Id.* at PageID #78.)  Similarly, Burgess contends that courts "recognize that waste elimination is a major life activity under the ADA."  (*Id.* at PageID #78–79.)  Burgess also maintains that her impairment substantially limits her major life activity of waste elimination.  (*Id.* at PageID #79–80.)  Finally, Burgess notes that her limitation is not "incontinence" as that term does not appear in her Complaint.  (*Id.* at PageID #80.)

In its Reply, GCRTA asserts that Burgess has "not even explained, precisely, her alleged diagnosis," as her Complaint "leaves GCRTA to guess at what her 'host of other medical issues' might be that causes this 'overactive bladder' to come and go."  (Doc. No. 9 at PageID #92.)  GCRTA

---

[9] GCRTA references an article from the University of Michigan discussing incontinence, which indicates that "[n]early half of women over 50 say they sometimes leak urine … according to a new national poll."  (Doc. No. 6 at PageID #37) (citing https://www.michiganmedicine.org/health-lab/nearly-half-women-over-50-experience-incontinence-most-havent-talked-doctor) (last accessed July 2, 2025).

also challenges Burgess's position regarding incontinence because "[i]f 'overactive bladder' does not

mean 'incontinence,' *then what precisely is the alleged 'disability*?'" (*Id.* (emphasis in original).)

The ADA defines disability, in relevant part, as "a physical or mental impairment that

substantially limits one or more major life activities." *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467

(6th Cir. 1999); *see also* 42 U.S.C. § 12102(1)(A)–(C). A physical impairment includes, in relevant

part, "[a]ny physiological disorder or condition … or anatomical loss affecting one or more body

systems, such as … genitourinary [systems] …" 29 C.F.R. § 1630.2(h)(1). A major life activity

includes, in relevant part, "[t]he operation of a major bodily function, including functions of the …

bowel [and] bladder …" 29 C.F.R. § 1630.2(i)(1)(ii).

"An impairment is a disability … if it substantially limits the ability of an individual to

perform a major life activity as compared to most people in the general population … [and] need not

prevent, or significantly or severely restrict, the individual from performing a major life activity in

order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). Under federal regulations,

the determination of whether an impairment substantially limits an individual in a major life activity

should "be construed broadly in favor of expansive coverage, to the maximum extent permitted by

the terms of the ADA." 29 C.F.R. § 1630.2(j)(1)(i). This is because the primary focus of ADA cases

is "whether covered entities have complied with their obligations and whether discrimination has

occurred, not whether an individual's impairment substantially limits a major life activity." 29 C.F.R.

§ 1630.2(j)(1)(iii). For this reason, federal regulations caution that "the threshold issue of whether an

impairment 'substantially limits' a major life activity should not demand extensive analysis." *Id.*

The Court finds that Burgess has plausibly alleged that she has a disability. First, Burgess

alleges that she suffers from "sickle cell anemia." (Doc. No. 1 at PageID #2.) Courts have routinely

found sickle cell anemia to constitute a physical impairment.  *See, e.g.*, *Johnson v. City of Chicago*, 549 Fed. App'x. 579, 582 (7th Cir. 2014) ("We … have little difficulty concluding that Johnson's sickle cell anemia is a physical impairment …").  Moreover, Burgess alleges that sickle cell anemia is a "disease associated with overactive bladder," and federal regulations make clear that a physiological disorder or condition "affecting one or more body systems, such as … genitourinary [systems]" constitutes a physical impairment.  *See* 29 C.F.R. § 1630.2(h)(1).  Second, the Court finds that a major life activity includes "[t]he operation of a major bodily function, including functions of the … bowel [and] bladder …"  *See* 29 C.F.R. § 1630.2(i)(1)(ii); *see also Workman*, 165 F.3d at 467 ("[T]he jury could have decided that controlling one's bowels is a major life activity …"); *Day v. National Elec. Contractors Association*, 91 F. Supp.3d 1008, 1018 (S.D. Ohio 2015) ("[S]ubstantial authority exists that the functioning of the bowels should be considered to be a major life activity.") (citing cases and regulations).  Third, the Court finds that Burgess's Complaint can plausibly be construed as alleging that her sickle cell anemia is an "impairment affecting waste elimination and the operation of urinary and bladder function."  (Doc. No. 8 at PageID #80.); *see also Wirtz v. Ford Motor Co.*, 2008 WL 565260, at *2 (E.D. Mich. Feb. 28, 2008) (finding that plaintiff's "medical condition which causes her to urinate frequently … does substantially limit her major life activity of controlling her bladder" under the ADA).  This is particularly true in light of federal regulations instructing that this threshold issue should "be construed broadly in favor of expansive coverage … [and] should not demand extensive analysis."[10]  *See* 29 C.F.R. § 1630.2(j)(1)(i)–(iii).

---

[10] Although GCRTA asserts otherwise under *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), the Court finds that *Toyota* has been superseded by Congressional action.  *See Verhoff v. Time Warner Cable, Inc.*, 299 Fed. App'x. 488, 494 (6th Cir. 2008) ("Congress outright rejected the Supreme Court's directive in *Toyota* that the ADA's terms should be 'interpreted strictly to create a demanding standard for qualifying as disabled.' Instead, Congress now

16

The Court is not swayed by GCRTA's arguments.  First, the Court rejects GCRTA's argument that "incontinence" and an "overactive bladder" must be one and the same, or that Burgess has not properly alleged her diagnosis.  In her Complaint, Burgess explicitly alleges that she suffers from sickle cell anemia which is a "disease associated with overactive bladder."  (Doc. No. 1 at PageID #2.)  Thus, it is plausible to read Burgess's Complaint as alleging that her sickle cell anemia is a condition that causes her to urinate frequently.  Indeed, courts have drawn the distinction between urinary incontinence versus a medical condition that "can cause frequent urination."  *See E.E.O.C. v. Cast Products, Inc.*, 2009 WL 595935, at *6 (N.D. Ill. Mar. 9, 2009) ("In contrast, Ortega does not contend that his impairment is urinary incontinence; rather, he claims that diabetes substantially limits his ability to eliminate waste.").  Further, the term "overactive bladder" need not be equated to "incontinence" because the former could be construed as an increased frequency in the need to urinate, while the latter could be construed as the inability to prevent urination.[11]  The Court reject GCRTA's argument about "half of women her age" experiencing incontinence for similar reasons.[12]

---

tells us that '[t]he definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals under this Act.'") (citations omitted).

[11] *See, e.g.*, https://dictionary.cambridge.org/us/dictionary/english/incontinence (defining incontinence as the "inability to control the excretion of urine …"); https://www.mayoclinic.org/diseases-conditions/overactive-bladder/symptoms-causes/syc-20355715 (distinguishing overactive bladder as causing "sudden urges to urinate that may be hard to control" from urgency incontinence involving a "loss of urine that isn't intended").  The Court cites to these sources for the sole purpose of demonstrating the plausibility of Burgess's allegations under her interpretation of the Complaint and to showcase why it is premature for the Court to conclude as a matter of law that "incontinence" and "overactive bladder" must be one in the same.  Accordingly, the Court makes no final determination as to these conditions at this stage.  Rather, the parties' differing interpretations of Burgess's condition underscores the need for discovery on the issue.  However, despite the parties reaching different interpretations of Burgess's Complaint, Burgess is entitled to have her Complaint read in the light most favorable to her as the non-moving party at this stage.  *See Gunasekera*, 551 F.3d at 466.

[12] Moreover, the Court declines at this stage to give weight to a single news article from the University of Michigan—referencing a poll of approximately 1000 women, a percentage of whom said they had experienced urinary incontinence—as the basis for concluding as a matter of law that Burgess is not limited in her major life activity "as compared to most people in the general population."  *See https://www.michiganmedicine.org/health-lab/nearly-half-women-over-50-experience-incontinence-most-havent-talked-doctor*; 29 C.F.R. §1630.2(j)(1)(ii).  This extends well beyond the purview of a 12(b)(6) evaluation.  And, in any event, GCRTA's article discussing incontinence equates the term to

17

(Doc. No. 6 at PageID #45.)  Finally, the Court rejects GCRTA's claim that Burgess fails to explain why she cannot use other restrooms in Tower City.  Notwithstanding that this argument extends beyond the pleadings as the Complaint does not reference these other restrooms, *see supra* Section IV.A, Burgess expressly responds in her Opposition that these other Tower City bathrooms "are too far away for rail operators to use and keep to the schedule."  (Doc. No. 8 at PageID #82.)

Accordingly, the Court finds that Burgess has plausibly alleged that she is an individual with a disability under the ADA.

## 2.    Qualified Individual

The Court next turns to whether Burgess has plausibly alleged that she is otherwise qualified for her position despite her disability.

In its Motion, GCRTA argues that Burgess is not otherwise qualified for and cannot perform the essential functions of her Rail Operator position "with or without reasonable accommodation." (Doc. No. 6 at PageID #47.)  GCRTA contends that Burgess's Complaint is contradictory because despite alleging that "she can perform the essential functions of her job," the "ongoing litigation seems to suggest otherwise."  (*Id.*)  GCRTA submits that "[t]rain operators must run on a strict schedule," and that "[r]epeated unscheduled bathroom breaks cannot be tolerated by GCRTA who must transport riders on-time."  (*Id.*)  Thus, GCRTA maintains that it is an "essential function of train operators to relieve themselves (1) before a shift (2) after a shift (3) during regular work breaks or (4) on rare occasions, by calling 'Code 10' over the radio and thereby arranging for a replacement train operator to continue to the service route.  (*Id.* at PageID #48.)  Accordingly, GCRTA asserts that

---

"experience[ing] urine leakage"—which further emphasizes the Court's previous point that "incontinence" may be distinguishable from an "overactive bladder" which may involve an increased frequency in urination.  *See supra* note 11.

18

operators who cannot abide by these options for elimination of bodily waste cannot be operators because they "cannot meet an 'essential function' of the job," and that the "ADA does not demand that an employer exempt a disabled employee from an essential function of the job as an accommodation." (*Id.*)

In her Opposition, Burgess contends that she is qualified and able to perform the essential functions of the job. (Doc. No. 8 at PageID #81.) Burgess points to her allegation that she has been operating trains for GCRTA since 2011 for support that "[s]he is obviously capable of doing so." (*Id.*) Next, Burgess disputes GCRTA's position that she cannot allege both that "she can perform the essential functions of her job with an accommodation, or that she can perform them without an accommodation." (*Id.*) Specifically, Burgess reiterates that she "can perform the job's essential functions when a restroom break at Tower City is not needed, but she can also do so with the requested accommodation when she does not need that restroom break." (*Id.*) Burgess thus argues that she is "capable of performing the essential functions of her job with or without accommodation." (*Id.*)

In its Reply, GCRTA reiterates that a "train operator's essential functions are incompatible with alleged urgent urinary incontinence." (Doc. No. 9 at PageID #95.) According to GCRTA, "[s]ome jobs simply cannot be done by those who claim to have certain alleged disabilities." (*Id.*)

As previously explained, the ADA prohibits employers from "discriminating against a qualified individual on the basis of disability ..." 42 U.S.C. § 12112(a). "A 'qualified individual' is an employee with a disability who can perform the 'essential functions' of his job 'with or without reasonable accommodation.'" *Cooper v. Dolgencorp, LLC*, 93 F.4th 360, 368 (6th Cir. 2024) (citing § 12111(8)).

19

"Failure-to-accommodate cases typically fall into two broad categories: (1) cases where the plaintiff does not want an accommodation but instead makes 'the straightforward claim' that he can do his job 'as it exists'; and (2) 'those in which the plaintiff challenges a particular job requirement as unessential or claims that he can do the job with reasonable accommodations on the part of the employer." *Id.* at 369 (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1182 (6th Cir. 1996)). Under the second category, "[i]f the employer claims [] that the disabled individual would be unqualified to perform the essential functions of the job even with the proposed accommodation, the disabled individual must prove that he or she would in fact be qualified for the job if the employer were to adopt the proposed accommodation." *Preston v. Great Lakes Specialty Finance Inc.*, 724 Fed. App'x. 453, 455 (6th Cir. 2018); *see also Cooper*, 93 F.4th at 371.

The Court finds that Burgess has plausibly alleged that she is a qualified individual. First, Burgess alleges that she "has since 2011 performed the essential functions of her position" and that she "is employed by Defendant GCRTA as a Rail Operator." (Doc. No. 1 at PageID #2, 4.) Thus, it is not implausible at this stage to assume that Burgess can perform the essential functions of her position without accommodation if she has been performing that same role for fourteen years. Moreover, Burgess has also alleged that she "would be qualified to perform the essential functions of the job with [a] reasonable accommodation." *Cooper*, 93 F.4th at 371. Specifically, nothing in Burgess's Complaint suggests that she would be incapable of performing the essential functions of her position even if she was granted a restroom accommodation. At this stage, Burgess's allegations are sufficient to survive dismissal.

GCRTA's arguments do not change this conclusion. In its Motion, GCRTA submits that "[r]epeated unscheduled bathroom breaks cannot be tolerated by GCRTA who must transport riders

20

on-time." (Doc. No. 1 at PageID #47.)  But Burgess does not request that she be permitted to take any *additional* "unscheduled bathroom breaks" that may result in her not being on-time.  Rather, Burgess seeks an accommodation to use an alternate restroom *during* her already-scheduled restroom breaks—the same "regular work breaks" that GCRTA suggests that Burgess should be utilizing. (Doc. No. 6 at PageID #48.)  In other words, Burgess's request to use an alternate restroom during her already-scheduled breaks—simply to allow her time to do so in light of the long line at the one unisex restroom near the rotunda[13]—would not implicate any additional time or "unscheduled bathroom breaks" as compared to any other employee.  Similarly, the Court rejects the argument Burgess could not have pled in the alternative that she could perform the essential functions of her job both "with or without" reasonable accommodation.  Indeed, both are viable theories under the ADA.  *See Cooper*, 93 F.4th at 368–73 (evaluating both theories for failure to accommodate claim).

Accordingly, the Court finds that Burgess has adequately pled at this stage that she is a qualified individual under the ADA.

### 3.  Awareness of Disability

The Court next turns to whether GCRTA was aware of Burgess's disability.  While not addressed by GCRTA's Motion or Burgess's Opposition, GCRTA submits in its Reply that Burgess has failed to plausibly allege that "GCRTA is aware of [Burgess's disability]."  (Doc. No. 9 at PageID #94.)  The Court rejects this argument for two reasons.  First, the argument was raised for the first time on Reply and is therefore waived.  *See Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588,

---

[13] The Court rejects GCRTA's arguments at this stage regarding other restrooms for the same reasons as discussed above—namely, that the argument extends beyond the pleadings and considering Burgess's response that such restrooms "are too far away for rail operators to use and keep to the schedule." (Doc. No. 8 at PageID #82.)  The Court will address the issue on summary judgment.

595 n.4 (6th Cir. 2008).  Second, Burgess plainly alleges that on multiple occasions, she "requested as a disability accommodation the option of using [the alternate restroom]" and that GCRTA refused her request.  (Doc. No. 1 at PageID #3.)  Accordingly, the Court finds this element met.[14]

### 4.    Reasonable Accommodation

Finally, the Court turns to the issue of whether Burgess requested a reasonable accommodation that GCRTA failed to provide.  As a preliminary matter, the parties do not dispute that Burgess requested an accommodation from GCRTA or that GCRTA refused said accommodation.  (*See* Doc. No. 6 at PageID #47; Doc. No. 8 at PageID #82.)  Rather, the parties dispute whether Burgess's requested accommodation is "reasonable" under the ADA.

In its Motion, GCRTA contends that Burgess's accommodation is not reasonable.  (Doc. No. 6 at PageID #45–47.)  While GCRTA concedes that a reasonable accommodation may include "making existing facilities … readily accessible to and usable by individuals with disabilities" under 42 U.S.C. § 12111(9), it argues that "[a]n employer does not fail to provide a reasonable accommodation … when there is more than one accommodation, and the employer chooses '[a] less expensive accommodation[,] [an] accommodation that is easier to provide," "or an accommodation other than the accommodation that the employee prefers.  (*Id.* at PageID #46.)  In the present case,

---

[14] To eliminate any doubt on this point, the Court notes that GCRTA itself attaches to its Motion a letter from Burgess's attorney in which he explicitly informs GCRTA of Burgess's alleged disability while again requesting an accommodation on her behalf.  (Doc. No. 6-4 at PageID #66) ("Ms. Burgess has worked as a GCRTA rail operator for many years and suffers from sickle cell disease and kidney cysts. Her symptoms include the need to urinate frequently and urgently.").  The Court further notes that it does not rely on this letter for the truth of the matter asserted—i.e., the Court does not find that the letter establishes that Burgess has said disabilities.  Rather, the Court instead references the letter for the mere fact that it *exists* for purposes of showcasing GCRTA's notice and awareness of Burgess's claimed disability.  *See supra* Section IV.A.  Separate from the issue of whether Burgess has alleged a disability, this letter makes clear that GCRTA was on notice that Burgess *claimed* that she "suffers from sickle cell disease and kidney cysts."  (Doc. No. 6-4 at PageID #66.)

GCRTA maintains that Burgess "already has access to an adequate restroom to satisfy this need without an accommodation" and asserts that Burgess fails to demonstrate why the already-provided restroom is not suitable for her needs and that "use of the '*particular* bathroom' where the cash gets counted is not reasonable."  (*Id.* at PageID #47.)

In her Opposition, Burgess submits that "[t]he reason Defendant chose not to say where the other Tower City bathrooms are located is because they are too far away for rail operators to use and keep to the schedule."  (Doc. No. 8 at PageID #82.)  Further, Burgess responds to GCRTA's reasonableness argument by indicating that after GCRTA "said it would grant the accommodation if she obtained CJIS certification, Burgess provided her certification from the Ohio Bureau of Criminal Investigation (BCI)," and that "[w]ith BCI certification, Defendant knew [Burgess] would certainly obtain clearance through CJIS" and thus "changed its mind and would not allow the accommodation." (*Id.*)

In its Reply, GCRTA asserts that it "initially offered Burgess the ability to use the restroom if she would obtain and pass a background check <u>and Burgess refused</u>," and "[w]hile she later agreed to have this background check performed, GCRTA reassessed its initial decision and could not make an exception for Burgess given the legal failures of her claim."  (Doc. No. 9 at PageID #92 (emphasis in original).)  GCRTA also reiterates that Burgess "fails to explain precisely why a particular bathroom at Tower City is the only way to move past this claimed problem."  (*Id.* at PageID #95.)

The ADA's regulations indicate that, "[t]o determine the appropriate reasonable accommodation [for a given employee], it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]." *Kleiber v. Honda of America Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) (citing 29 C.F.R. § 1630.2(o)(3)).  "[T]he interactive process requires communication

23

and good-faith exploration of possible accommodations." *Id.* "When a party obstructs the process or otherwise fails to participate in good faith, 'courts should attempt to isolate the cause of the breakdown and then assign responsibility.'" *Id.* (citing *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1285 (7th Cir. 1996).

The Court finds that Burgess has sufficiently alleged the denial of a reasonable accommodation at this stage.  In her Complaint, Burgess alleges that the "one unisex restroom near the rotunda lobby … has one toilet and one urinal for use by only one person at a time," and that "there is often a line of employees waiting to use that restroom, which makes it impossible for [Burgess] to have sufficient time to relieve herself using that restroom and keep to GCRTA's rail schedule."  (Doc. No. 1 at PageID #2.)  Burgess then alleges that on several occasions, she "requested as a disability accommodation the option of using a restroom located just past the entrance to the Red line, inside space used as an office by the Customer Service Supervisor (the customer service restroom)," but "GCRTA refused [her] request to be able to use the customer service restroom as an accommodation for her disability, and has failed to provide any reasonable accommodation." (*Id.* at PageID #3.)  These allegations, taken as true and construed in the light most favorable to Burgess, are sufficient.

Moreover, the Court finds that GCRTA's arguments to the contrary are premature.  As a preliminary matter, these alternate Tower City restrooms fall outside of the Complaint.  Moreover, the viability of such alternate restrooms is contested by the parties, as GCRTA claims that these "many other available restrooms" are suitable while Burgess claims that they "are too far away for rail operators to use and keep to the schedule."  (Doc. No. 6 at PageID #47; Doc. No. 8 at PageID #82.)  The same holds true for the parties' dispute regarding the initial proposal for Burgess to use

the desired restroom following a background check, with GCRTA arguing that Burgess is the one who refused while Burgess responds that GCRTA is the one who changed its mind after knowing that Burgess would ultimately pass. (Doc. No. 8 at PageID #82; Doc. No. 9 at PageID #92.) These hotly contested issues of fact are exactly the types of issues that require discovery to determine which "party obstruct[ed] the process or otherwise fail[ed] to participate in good faith" so that the Court may "attempt to isolate the cause of the breakdown and then assign responsibility." *Kleiber*, 485 F.3d at 871. The Court thus declines to decide this at the motion to dismiss stage, and instead will revisit the issue on summary judgment.

### 5. Whether State Law Claim is Preempted

The Court next turns to GCRTA's argument that Burgess's claim under O.R.C. § 4112.02 is preempted.

In its Motion, GCRTA asserts that Ohio courts have held that claims of discrimination under state law are preempted "when the claim arises from or depends on an interpretation of a CBA [collective bargaining agreement]." (Doc. No. 6 at PageID #49.) GCRTA discusses various cases addressing this point to support its argument that the "use, or non-use of specific company bathrooms located in controlled areas of GCRTA is a management right to direct the workforce." (*Id.* at PageID #50.) Finally, GCRTA argues that if the Court dismisses Burgess's federal claims, it should decline jurisdiction over Burgess's state law claim as well. (*Id.* at PageID #51.)

In her Opposition, Burgess responds to the case law cited by GCRTA. (Doc. No. 8 at PageID #85–87.) Burgess also argues that she "does not refer to a CBA in her Complaint and the rights she asserts neither arise from a CBA nor are they dependent on the interpretation of a CBA." (*Id.* at PageID #87.) Burgess further asserts that GCRTA "has not identified any CBA provision at all, much

25

less explained why an unidentified CBA contractual provision tossed out at the end of its argument is either the basis for [Burgess's] rights or requires interpretation to discern her rights …"  (*Id.*) Finally, Burgess contends that GCRTA has failed to establish grounds for dismissal of the federal claims, and that the Court should thus retain supplemental jurisdiction over her state claim.  (*Id.*)

In its Reply, GCRTA argues that this is "really a union grievance about which bathrooms she can use," which is a "condition of her employment, that the Amalgamated Transit Union and GCRTA have collectively bargained on." (Doc. No. 9 at PageID #94.)  GCRTA also reiterates that if Burgess's federal claims are dismissed, the state law claim should also be dismissed.  (*Id.* at PageID #95.)

The Court finds that this argument is premature.  Indeed, nowhere in Burgess's Complaint is a collective bargaining agreement mentioned.  Moreover, GCRTA has not attached any collective bargaining agreement, or pointed to the specific provisions relevant to its argument.[15]  Accordingly, without making any determination on the law discussed by the parties, the Court declines to address this argument further at this stage.  Finally, because Burgess's federal claims survive, the Court declines to dismiss Burgess's state law claim for lack of jurisdiction.

## V.    Conclusion

Accordingly, for the foregoing reasons, GCRTA's Motion is DENIED.

**IT IS SO ORDERED.**

Dated: July 7, 2025                                  *s/ Pamela A. Barker*
                                                     PAMELA A. BARKER
                                                     UNITED STATES DISTRICT JUDGE

---

[15] GCRTA does attach its position statement submitted to the OCRC investigator, in which GCRTA mentions a CBA. (Doc. No. 6-2 at PageID #55.)  However, GCRTA does not attach any copy of a CBA to its Motion.

26