**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **MONIQUE BURGESS,** | **Case No. 1:24-cv-01217-PAB** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **GREATER CLEVELAND REGIONAL TRANSIT AUTHORITY,** | **MEMORANDUM OPINION & ORDER** |
| **Defendant.** | |

Currently pending before the Court is Defendant Greater Cleveland Regional Transit Authority's ("GCRTA") Motion to Dismiss (the "Second Motion to Dismiss"). (Doc. No. 21.) Plaintiff Monique Burgess ("Burgess") filed an Opposition to the Second Motion to Dismiss on March 19, 2026, to which GCRTA replied on May 11, 2026. (Doc. Nos. 23, 27.) Also pending before the Court is Burgess' Motion for Leave to File Second Amended Complaint Instanter (the "Motion for Leave"). (Doc. No. 25.) GCRTA filed an Opposition to the Motion for Leave on May 15, 2026. (Doc. No. 28.) Burgess did not file a Reply.

For the following reasons, the Second Motion to Dismiss (Doc. No. 21) is DENIED and the Motion for Leave (Doc. No. 25) is GRANTED. The Second Amended Complaint (the "SAC") is deemed filed as of the date of this Memorandum Opinion and Order. Pursuant to Rule 12(b)(6), Count V of the SAC is dismissed for failure to state a claim. GCRTA shall file its Answer to the SAC no later than seven days from the date of this Memorandum Opinion and Order.

## I.    Procedural Background

On July 17, 2024, Burgess filed her Complaint against GCRTA. (Doc. No. 1.) Therein,

Burgess alleges three claims under: (i) Title I of the Americans with Disabilities Act ("ADA"); (ii) Section 504 of the Rehabilitation Act ("Section 504"); and (iii) Ohio Revised Code § 4112.02.  (*Id.*) On November 15, 2024, GCRTA filed a Motion to Dismiss (the "First Motion to Dismiss").  (Doc. No. 6.)  After the First Motion to Dismiss was fully briefed, on July 7, 2025, the Court denied the First Motion to Dismiss.  (Doc. No. 11.)  On July 23, 2025, GCRTA filed its Answer.  (Doc. No. 13.)

On September 9, 2025, the Court issued a Case Management Conference Order.  (Doc. No. 17.)  Therein, among other things, the Court ordered that the pleadings shall be amended without leave of Court on or before December 19, 2025.  (*Id.*)  On December 19, 2025, Burgess filed her Amended Complaint (the "FAC").  (Doc. No. 19.)  Therein, Burgess alleges that she received a right to sue letter from the OCRC on November 20, 2025, and accordingly, added state law claims related to her termination, which allegedly occurred on August 1, 2025.  (*Id.* at ¶¶ 21, 23.)  Burgess did not allege federal law claims related to her termination in the FAC.

In response, on January 20, 2026, GCRTA filed the Second Motion to Dismiss.  (Doc. No. 21.)  Therein, GCRTA suggests, among other things, that the Court lacks subject matter jurisdiction over this case based upon a parallel arbitration concerning Burgess' suspension or termination[1] under the parties' collective bargaining agreement (the "CBA").  (*See id.*)  On March 19, 2026, Burgess filed her Opposition.  (Doc. No. 23.)

On April 7, 2026, the Court conducted a Status Conference and entered the following Minutes:

Telephone Status Conference held on 4/7/2026. Participating on behalf of Plaintiff was Attorney David W. Neel and participating on behalf of Defendant was Attorney Brian R. Gutkowski. First, the Court clarified for counsel that the expert discovery deadline of February 15, 2026 set forth in the Case Management Order filed on 9/9/25 was a typographical error. The current deadline is August 7, 2026,

---

[1] The parties dispute the scope of the arbitration.  GCRTA suggests the arbitration is based upon Burgess' termination, but Burgess suggests that the arbitration is based upon her suspension.  This distinction, however, does not alter the Court's decision today.  Accordingly, the Court does not make any findings as to the exact scope of the arbitration.

2

consistent with Plaintiff's proposed deadlines set forth in the Report of Parties' Planning Meeting. Second, counsel and the Court agreed that Plaintiff must file her Motion for Leave to File Second Amended Complaint by May 1, 2026; any opposition is due by May 15, 2026; and any reply is due by May 22, 2026. Counsel for Plaintiff requested a 90-day extension of the current case management deadlines, counsel for Defendant did not oppose the request, and the Court granted same. Accordingly, the non-discovery discovery deadline is now September 10, 2026; the expert discovery deadline is now November 5, 2026; the initial expert report(s) must be exchanged on or before September 24, 2026; the responsive expert report(s) must be exchanged on or before October 8, 2026; and the dispositive motion deadline is now November 19, 2026.

In compliance with this Order, Burgess filed her Motion for Leave on April 30, 2026. (Doc. No. 25.)

On May 11, 2026, GCRTA filed its Reply in support of the Second Motion to Dismiss. (Doc. No. 27.)  Four days later, on May 15, 2026, GCRTA filed its Opposition to the Motion for Leave. (Doc. No. 28.)  Burgess did not file a Reply.

Accordingly, the Second Motion to Dismiss and the Motion for Leave are ripe for review.

## II.      Analysis

### A.      The Court denies the Second Motion to Dismiss

In the Second Motion to Dismiss, GCRTA makes two arguments:  (i) the FAC fails to state a claim under Rule 12(b)(6), and (ii) the Court lacks subject matter jurisdiction.[2]  As explained below, the Court rejects both arguments.

#### 1.      The Court denies GCRTA's Rule 12(b)(6) challenge

The Court first denies GCRTA's request to dismiss the FAC for failure to state claim.  In its Motion, GCRTA asserts that it "supplements the exhibits and legal arguments found in its prior motion to dismiss" and "reincorporates those grounds into this motion." (Doc. No. 21, PageID #425.)

---

[2] In the conclusion paragraph in the Second Motion to Dismiss , GCRTA makes an alternative argument asking the Court to order Burgess to file a more definite statement pursuant to Rule 12(e) should the Court deny the Second Motion to Dismiss.  GCRTA provides no argument or legal authority supporting this request.  The Court accordingly denies that request.

3

Having already rejected those arguments, the Court does so again.

GCRTA then raises a host of new arguments in its Reply for why Plaintiff's claims fail under Rule 12(b)(6).  (Doc. No. 27, PageID #937–39.)  Courts, however, "will generally not hear issues raised for the first time in a reply brief." *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001). (citing *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 820 F.2d 186, 189 (6th Cir. 1987)).  If a party raises an argument for the first time in its reply brief, the party has waived the argument. *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 595, n.4 (6th Cir. 2008) (citing *Renkel v. United States*, 456 F.3d 640, 642, n.1 (6th Cir. 2006)); *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).  The Court, therefore, refuses to consider these arguments.  *Jemison v. AFIMAC Glob.*, 645 F. Supp. 3d 781, 801 (N.D. Ohio 2022) ("the Court rejects this argument because AFIMAC only raised it for the first time in its Reply brief"); *Jackson v. Saul*, No. 1:18cv2362, 2020 U.S. Dist. LEXIS 30175, at *18 (N.D Ohio Feb. 21, 2020) ("The Court finds that, by failing to properly raise this argument in her Brief on the Merits, Jackson waived this issue").

For these reasons, GCRTA's request to dismiss the FAC for failure to state a claim is denied.

**2.      The Court has subject matter jurisdiction over this dispute.**

The standard of review of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *Wayside Church v. Van Buren Cnty.*, 847 F.3d 812, 816–17 (6th Cir. 2017). A facial attack "questions merely the sufficiency of the pleading" and requires the district court to "take[] the allegations in the complaint as true." *Gentek Bldg. Prods., Inc. v. Sherwin Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th

4

Cir. 2016). By contrast, a factual attack "raises a factual controversy requiring the district court 'to weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Wayside Church*, 847 F.3d at 817 (quoting *Gentek Bldg. Prods*., 491 F.3d at 330). The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Rogers v. Stratton Indus., Inc*., 798 F.2d 913, 915 (6th Cir. 1986). The court may allow "affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). When a defendant makes a factual challenge, as GCRTA does here, the Court can consider documents outside of the pleadings without converting the motion to a motion for summary judgment. *Dalton v. Jefferson Smurfit Corp*., 979 F. Supp. 1187, 1193 (S.D. Ohio 1997).

In the Second Motion to Dismiss, GCRTA makes three jurisdictional arguments: (1) O.R.C. § 4117.09(B)(1) deprives the Court of subject matter jurisdiction, (2) O.R.C. § 4117.10(A) deprives the Court of subject matter jurisdiction, and (3) Burgess was required to exhaust her administrative remedies under the CBA. The Court disagrees, as explained below.

### i.       O.R.C. § 4117.09(B)(1) does deprive this Court of subject matter jurisdiction

In the Second Motion to Dismiss, GCRTA asserts that O.R.C. § 4117.09(B)(1) deprives the Court of subject matter jurisdiction and "preempts" Burgess' claims here. (Doc. No. 21, PageID #430–31.) Burgess does not specifically respond to this argument in her Opposition. GCRTA does not mention this statute in its Reply.

Chapter 4117 of the Ohio Revised Code governs collective bargaining with public employers, such as the GCRTA. O.R.C. § 4117.09(A) provides that "[t]he parties to any collective bargaining agreement shall reduce the agreement to writing and both execute it." "The agreement shall contain

a provision that:"

> Provides for a grievance procedure which may culminate with final and binding arbitration of unresolved grievances, and disputed interpretations of agreements, and which is valid and enforceable under its terms when entered into in accordance with this chapter. No publication thereof is required to make it effective. A party to the agreement may bring suits for violation of agreements or the enforcement of an award by an arbitrator in the court of common pleas of any county wherein a party resides or transacts business.

O.R.C. § 4117.09(B)(1).

The Court rejects GCRTA's reliance on this statute based on its plain language alone.  O.R.C. § 4117.09(B)(1) simply provides that a collective bargaining agreement must contain a grievance procedure, which may include arbitration.  It is perplexing how a *state* statute could somehow limit a *federal* court's subject matter jurisdiction over *federal* claims without running afoul of the Supremacy Clause.  But what is even more perplexing is how a statute that sets forth what should be contained in a collective bargaining agreement limits a plaintiff's ability to file statutory claims in federal court, especially when that statute provides that "[a] party to the agreement may bring suits for violation of agreements . . . in the court of common pleas . . . ."

The only authority GCRTA cites on this point further supports the Court's conclusion.  In *Ohio Council 8 v. City of Lakewood*, 270 N.E.3d 1079 (Ohio 2025), the Ohio Supreme Court *allowed* claims concerning a CBA to proceed in court and held that "[w]hen a party does not allege an unfair labor practice or conduct that constitutes an unfair labor practice but instead raises a claim that is independent of the rights created by R.C. Ch. 4117, jurisdiction is not exclusive to SERB and may be exercised by a common pleas court." *Id.* at 1082.  And the court rejected the city's argument that O.R.C. § 4117.09(B)(1) deprived the common pleas court of jurisdiction over the union's motion to compel arbitration. *Id.* at 1084–85.

6

Simply put, GCRTA's assertion that O.R.C. § 4117.09(B)(1) deprives this Court of subject matter jurisdiction borders on frivolity. The Court therefore finds that O.R.C. § 4117.09(B)(1) does not deprive it of subject matter jurisdiction.

### ii. O.R.C. § 4117.10(A) does not deprive this Court of subject matter jurisdiction

GCRTA's reliance on O.R.C. § 4117.10(A) fares no better. GCRTA argues that "Plaintiff's claims are preempted and displaced by R.C. 4117.10(A) because proof of her claims depends exclusively on the Court's interpretation and/or analysis of the terms of an agreement made between the parties to a labor contract, namely the CBA." (Doc. No. 21, PageID #432.) According to GCRTA, "Plaintiff alleges that GCRTA misapplied the terms of the CBA when it terminated her employment" and that "Plaintiff filed a grievance over her last chance agreement and termination." (Doc. No. 21, PageID #436.) GCRTA argues that "Plaintiff is arbitrating those issues" and "[i]n so doing, Plaintiff actually concedes how the CBA governs her allegations." (*Id.*) GCRTA argues that "[s]he must establish, as she has pled, that GCRTA misapplied its discipline policy" and "she must establish that she challenged the misapplication of the CBA using the CBA's mandatory grievance and arbitration procedures, as she is contractually obligated to do." (*Id.* at PageID #437.)

In her Opposition, Burgess argues that the arbitration does not concern her termination, but rather her suspension and that she "did not bring this lawsuit because she got suspended." (Doc. No. 23, PageID #553–54.) Burgess argues that "Defendant's refusal to accommodate and its termination decision are not even mentioned in any of Defendant's exhibits." (*Id.* at PageID #554.) Burgess then argues that "RTA's CBA does not 'clearly and unmistakably' require arbitration of Plaintiff's specific claims in this case, it does not specifically mention the statutes at issue in this lawsuit, and the CBA does not even contain an anti-discrimination provision that could be the subject of an arbitration."

(*Id.* at PageID #555–56.)  Burgess next argues that "Defendant fails to identify any anti-discrimination provisions in the CBA, or any other provisions in the CBA, which this Court must analyze and interpret in order to determine whether Defendant discriminated against Plaintiff in violation of federal and state statutory law." (*Id.* at PageID #559.)

In its Reply, GCRTA argues that the "clearly and unmistakably" standard does not apply here. (Doc. No. 27, PageID #927–28.)  GCRTA argues that even if that standard applies here, a 1979 Agreement, a 1997 Amendment, and a 2022 MOU (which are all attached to its Reply) "are compelling evidence that" the standard is met.  (*Id.* at PageID #928–30, 933–34.)  GCRTA then argues that the Burgess' accommodation claim cannot be resolved without interpreting the 2022 MOU because "what the 2022 MOU requires" must be determined "before asking whether GCRTA deviated from it for discriminatory reasons." (*Id.* at PageID #931–32.)  GCRTA also points the Court to the undersigned's decision in *Morton v. Greater Cleveland Reg'l Transit Auth.*, No. 1:21-cv-01986-PAB, Doc. No. 10 and attempts to distinguish it.  (*Id.* at PageID #932–33.)

O.R.C. § 4117.10(A) provides in relevant part:

> An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wages, hours, and terms and conditions of public employment covered by the agreement. If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure and the state personnel board of review or civil service commissions have no jurisdiction to receive and determine any appeals relating to matters that were the subject of a final and binding grievance procedure. Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees.

*Id.*  There is nothing in the plain language of this statute limiting *this* Court's jurisdiction over federal and state statutory claims.

8

But Ohio courts, as GCRTA points out, have held that "[e]xclusive jurisdiction to resolve unfair labor practice charges is vested in SERB in two general areas: (1) where one of the parties filed charges with SERB alleging an unfair labor practice under R.C. 4117.11 and (2) where a complaint brought before the common pleas court alleges conduct that constitutes an unfair labor practice specifically enumerated in R.C. 4117.11." *State ex rel. City of Cleveland v. Sutula*, 937 N.E.2d 88, 92 (Ohio 2010) (quoting *State ex rel. Ohio Dept. of Mental Health v. Nadel*, 786 N.E.2d 49, 54 (Ohio 2003)). Thus, "if a party asserts claims that arise from or depend on the collective bargaining rights created by R.C. Chapter 4117, the remedies provided in that chapter are exclusive." *Id.* at 93 (quoting *Franklin Cty. Law Enforcement Assn.*, 572 N.E.2d 87, paragraph 2 of the syllabus (Ohio 1990)).

GCRTA points the Court to *Chenevey v. Greater Cleveland Reg'l Transit Auth.*, 992 N.E.2d 461 (Ohio App. 8th Dist. 2013). There, the Ohio Eighth District Court of Appeals affirmed the trial court's decision to dismiss the plaintiff's state law discrimination claims for lack of subject matter jurisdiction. *Id.* at 468. In so finding, the Court analyzed whether the plaintiff's "discrimination claims arise from, or depend on, the CBA in place at the time of the alleged discrimination." *Id.* at 466. It answered that question in the affirmative reasoning:

> In support of his age and race discrimination claims, Chenevey alleges as follows: (1) RTA restored and extended the previously expired eligibility list in order to promote a substantially younger, similarly situated, African-American employee; (2) RTA did not restore and extend the expired eligibility list in order to promote Chenevey during his tenure as acting sergeant; (3) he was ranked 11th on RTA's eligibility list; (4) he was passed over for another position in the detective bureau in favor of a substantially younger, similarly situated, African-American coworker; and (5) he was qualified for the sergeant and detective positions. Chenevey also claims, in support of his constructive discharge claim, that he was humiliated twice in being passed over for job openings or promotions in favor of substantially younger, similarly situated, African-American coworkers. He further claims that it became evident to him that his efforts in applying for new job openings or promotions would be futile, and he, therefore, resigned from the department.

All of these aforementioned claims hinge on the terms of the CBA in place during Chenevey's employment. Chenevey's discrimination claims cannot be resolved by a purely factual inquiry into RTA's motive or conduct. In order to prove the alleged discrimination, Chenevey must show that he was qualified for the positions for which he applied. The determination of his qualifications necessarily requires an interpretation of the 2006 eligibility list contained within the CBA, specifically with respect to whether RTA was obligated to extend the eligibility list and when Chenevey's eligibility for the open position originated. The expiration date of the eligibility list is determinative, and an analysis of the CBA is necessary in order to discern whether RTA acted in accordance with the terms or the conditions of the CBA or whether its conduct was wrongful, or discriminatory.

Additionally, Chenevey's claims of constructive discharge also implicate the terms of the CBA's 2006 eligibility list. Chenevey's claims that he was humiliated after twice being denied job openings for sergeant and detective positions in favor of less qualified, substantially younger, African-American coworkers; that RTA rescinded a promotion to sergeant, based upon the expiration of the eligibility list; and that he resigned when it became evident he would not be promoted or hired for new job openings require an examination of the eligibility list in order to ascertain whether RTA's conduct in hiring allegedly substantially younger, similarly situated, African-American coworkers and in repeatedly failing to promote Chenevey was wrongful. If RTA's actions were supported by the terms of the CBA, then no liability can attach for such conduct.

*Id.* at 467–68.

*Chenevey* is not the only authority on this issue.  Five years prior to deciding *Chenevey*, the Eighth District Court of Appeals reached a different conclusion in *Haynes v. Ohio Tpk. Comm'n*, 893 N.E.2d 850, 853 (Ohio App. 8th Dist. 2008).  In that case, the court held that the plaintiff's state law discrimination claims were not preempted by Ohio Revised Code Chapter 4117.  *Id.*  In so finding, the *Haynes* court found that "any agreement in a collective bargaining agreement to arbitrate a statutory claim, *** must be 'clear and unmistakable.'  Absent a clear waiver, it is not appropriate to find an agreement to arbitrate." *Id.* (quoting *Minnick v. Middleburg Hts.*, No. 81728, 2003 Ohio App. LEXIS 4569, at *13 (Ohio App. 8th Dist. Sept. 25, 2003)).   Applying this rule, the *Haynes* court found that "the collective bargaining agreement, while mentioning that the employer may not

10

discriminate based on age, does not contain a clear and unmistakable agreement to arbitrate statutory claims." *Id.* It also relied on Supreme Court case law to find that "the collective bargaining agreement would cover Haynes' contractual rights; however, in filing a lawsuit under R.C. 4112.02(A), he is asserting an independent statutory right." *Id.* (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49 (1974)); *see also Sinley v. Safety Controls Tech., Inc.*, No. 109065, 2020 Ohio App. LEXIS 2945, at *13 (8th Dist.) ("While a collective bargaining agreement may indeed require arbitration of statutory claims, thereby barring employees from suing in court, a collective bargaining agreement may only do so if the agreement's arbitration provision *expressly* covers statutory rights").

This district reached a similar result in *O'Donnell v. City of Cleveland*, 148 F. Supp. 3d 621 (N.D. Ohio 2015). In that case, the court, relying on *Haynes*, found that a state law claim for reverse discrimination could be heard in federal court without exhausting the grievance procedures in the CBA at issue because "the collective bargaining agreement, while mentioning that the employer may not discriminate, does not contain a clear and unmistakable agreement to arbitrate statutory claims." *Id.* at 630; *see also Rogers v. Horwitz*, No. 1:20-cv-02568, 2023 U.S. Dist. LEXIS 174885, at *25 (N.D. Ohio Sept. 29, 2023) ("As a result, there is nothing sufficiently specific in the CBA for the Court to find that there is an 'unmistakable and clear' waiver of Plaintiffs' ability to choose a judicial forum for their FMLA retaliation claims"); *Youngblood v. Bd. Of Comm'rs*, No. 4:19CV231, 2019 U.S. Dist. LEXIS 153234, at *7 (N.D. Ohio Sept. 9, 2019) ("The CBA's general arbitration clause does not expressly provide for arbitration of claims brought pursuant to Title VII, § 1983, or any Ohio anti-discrimination statutes (or even mention these statutes), and thus, Youngblood's right to bring such claims in a federal judicial forum is not waived by the CBA"); *Smith v. Bd. of Trs. Lakeland College*, 746 F. Supp. 2d 877, 898 (N.D. Ohio 2010) (finding that O.R.C. § 4117.10(A) did not require

11

the plaintiff "to exhaust CBA remedies prior to filing suit for violation of Title VII, § 1981, and O.R.C. § 4112.02" because "[]nowhere in the portions of the CBA submitted to the Court does it state that an employee waives his or her statutory right to pursue discrimination claims in court or that he or she agrees to submit statutory claims to arbitration"); *accord Lyons v. Jacobs*, No. 2:16-cv-813, 2017 U.S. Dist. LEXIS 152589, at *16 (S.D. Ohio Sept. 20, 2017) (holding that "the CBA wholly fails to reference § 1983 *and* explicitly states that it is not an aggrieved union member's sole remedy. Accordingly, the CBA does not provide Plaintiffs' exclusive remedy, and this Court has jurisdiction to consider Plaintiffs' claims"); *Short v. Mary*, No. 1:13-CV-704, 2014 U.S. Dist. LEXIS 1234055, at *12–13 (S.D. Ohio Sept. 4, 2014) (finding that statutory claims were not preempted by a CBA).[3]

Consistent with the above case law, the undersigned has already rejected GCRTA's jurisdiction argument in a prior case.  In *Morton v. Greater Cleveland Reg'l Transit Auth.*, No. 1:21-cv-01986-PAB, Doc. No. 10, the GCRTA argued, like it does here, "that this Court is divested of jurisdiction under Ohio Revised Code § 4117.10(A), because those claims must be arbitrated pursuant to the CBA or heard by SERB."  *Id.* at PageID #87.  GCRTA also relied on *Chenevey*, which the undersigned distinguished because, unlike in *Chenevey*, "[n]o such analysis of the CBA is required here to determine if Defendant was wrongfully terminated based on his race or disability."  *Id.* at PageID #89.  The undersigned concluded that "Plaintiff's claims seek redress under federal and state law, not under the CBA, the Court further holds that Plaintiff is not required to exhaust his contractual

---

[3] *But see Gamble v. Greater Cleveland Reg'l Transit Auth.*, No. 1:15 CV 1219, 2015 U.S. Dist. LEXIS 133936, at *6 (N.D. Ohio Sept. 30, 2015) ("Plaintiff's Complaint alleges that defendant misclassified his injury as a non-industrial medical condition so that defendant could appropriately terminate plaintiff under its Attendance Policy with its Long Term Absences provision. Therefore, interpretation of the Attendance Policy is dispositive to plaintiff's discrimination claim. Accordingly, plaintiff's claim is actually a state law contract claim over which this Court lacks jurisdiction").

obligations under the CBA before filing suit in this Court" and that "the CBA [does not] contain any language waiving an employee's rights to pursue statutory claims in court." *Id.* at PageID #91–93.

The Court reaches the same result here. As the Court has already explained to the GCRTA in *Morton*, the *Chenevey* court determined that plaintiff's "discrimination claims cannot be resolved by a purely factual inquiry into RTA's motive or conduct," but rather "necessarily requires an interpretation of the 2006 eligibility list contained within the CBA, specifically with respect to whether RTA was obligated to extend the eligibility list and when [plaintiff's] eligibility for the open position originated." *Id.* at PageID #89 (quoting *Chenevey*, 99 N.E.2d at 467). And here, Burgess' claims in the FAC do not require an analysis of the CBA to determine (i) whether GCRTA failed to provide her with a reasonable accommodation under the ADA, (ii) whether GCRTA discriminated against her based upon her disability or sex, and (iii) whether GCRTA retaliated against her. *See Ramoni v. Cuyahga Metro Hous. Auth.*, No. 1:21-cv-2072, 2023 U.S. Dist. LEXIS 15440, at *8, n.3 (N.D. Ohio Jan. 30, 2023) ("Thus, whatever the SERB's exclusive jurisdiction over claims related to Ohio Rev. Code Chapter 4117, this Court finds that it retains subject matter jurisdiction over Ramoni's civil rights claims because they are independent of Ohio Rev. Code Chapter 4117").

Further, the Court has reviewed the CBA here, and just as in *Morton*, concludes that there is no clear and unmistakable language waiving Burgess' right to file her statutory claims in federal court. Although the CBA has a grievance procedure and an agreement to arbitrate, neither sections of the CBA specifically mention the statutory claims raised in the FAC. The 1979 agreement, the 1997 addendum, and the 2022 MOU likewise do not even mention arbitration, let alone the statutory claims raised in the FAC.

In sum, Burgess' jurisdiction arguments are without merit. The Court accordingly finds that

it has subject matter jurisdiction over this dispute.

### iii. Burgess was not required to exhaust her administrative remedies under the CBA

GCRTA next argues that "Plaintiff has not pled that she availed herself to the mandatory grievance and arbitration procedures set forth in Article 9 and Article 10 of the CBA" and that "[t]his divests the Court of subject matter jurisdiction, as Plaintiff is contractually bound to exhaust the administrative remedies available to [her] through the CBA."  (Doc. No. 21, PageID #438.)  The Court rejects this argument.  As the Court explained in *Morton*:

> Because the Court has determined that Plaintiff's claims seek redress under federal and state law, not under the CBA, the Court further holds that Plaintiff is not required to exhaust his contractual obligations under the CBA before filing suit in this Court. When "claims under the collective bargaining agreement and those pursuant to statute are separate and independent of each other, [a] failure to pursue the grievance process to final arbitration is of no consequence." *Wilson v. Glastic Corp.*, 782 N.E.2d 1208, 1213 (Ohio Ct. App. 2002); *see also Luginbihl v. Milcor Ltd. P'ship*, 2002 WL 987853, at *4 (Ohio Ct. App. May 3, 2002) (holding that an employee who abandons the grievance procedure under a CBA can still bring a statutory claim in court). In *Haynes v. Ohio Turnpike Comm'n*, 893 N.E. 2d 850, 854 (Ohio Ct. App. 2008), the court determined that because the plaintiff's "statutory claims [were] distinct from his collective-bargaining rights . . . [h]e was not required to exhaust his administrative remedies before filing a lawsuit." *Id.* Following *Haynes*, the Court in *Smith*, 746 F. Supp. 2d at 898, held that when a CBA does not "state that an employee waives his or her statutory right to pursue discrimination claims in court or that he or she agrees to submit statutory claims to arbitration," the plaintiff is "not required to exhaust CBA remedies prior to filing suit for violation[s]" of federal and state law. Id. (emphasis added).
>
> Such is the case here. Because Plaintiff's claims arise under federal and state law, he is not precluded from bringing those claims in federal court based on an alleged failure to follow the grievance procedure set forth in the CBA. Nor does the CBA contain any language waiving an employee's rights to pursue statutory claims in court.[] Accordingly, Plaintiff is not required to first exhaust the administrative remedies set forth in the CBA.

*Morton* at PageID #91–92.  The Court adopts the same reasoning and conclusion here.  Accordingly, the Court rejects the GCRTA's arguments concerning exhaustion.

For all these reasons, the Court denies the Second Motion to Dismiss.[4]

**B.     The Court grants the Motion for Leave**

Having rejected the Second Motion to Dismiss, the Court next turns to the Motion for Leave. Plaintiff asserts that she is seeking "leave to file a Second Amended Complaint to assert claims that have ripened upon receipt of an EEOC Notice of Right to Sue issued on March 9, 2026, and which are based on her termination from employment with Defendant." (Doc. No. 25, PageID #905.) Burgess explains:

> Plaintiff filed the original Complaint on July 17, 2024, alleging that Defendant failed to accommodate disabilities. On or about August 6, 2025 Defendant terminated Plaintiff from employment. Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC"), which was dual-filed with the EEOC. After receiving a Notice of Right to Sue from the OCRC, Plaintiff filed a first Amended Complaint on December 19, 2025, which added claims under Ohio law for discriminatory and retaliatory termination. On March 9, 2026, the EEOC issued a Notice of Right to Sue to Plaintiff based on the same allegations that were the subject of the foregoing OCRC charge. Plaintiff's proposed Second Amended Complaint, attached as Exhibit A, asserts claims based on and authorized by the EEOC's Right to Sue Notice and otherwise preserves the existing claims and factual allegations.

(*Id.* at PageID #905–06.) Upon review of the proposed Second Amended Complaint (the "SAC"), the allegations supporting her claims are nearly identical to the FAC, other than Burgess updating her Section 504 claim to include allegations related to her termination. (Doc. No. 25-1.) Burgess asserts that the SAC is timely because "it is being filed within the applicable 90-day filing window" and that GCRTA will not suffer prejudice because "[t]he new claims are grounded in the same events set forth in the Amended Complaint, involve overlapping evidence and witnesses, and can be addressed within the existing or modestly adjusted schedule." (*Id.* at PageID #906.)

---

[4] GCRTA argues in its Reply that the "election of remedies" and "Plaintiff's active participation in the arbitration" require dismissal here. Because these arguments were raised for the first time in the GCRTA's Reply, the Court declines to consider them. *Jemison*, 645 F. Supp. 3d at 801; *Jackson*, 2020 U.S. Dist. LEXIS 30175 at *18.

15

GCRTA disagrees vehemently.  In its Opposition, it argues that (1) Burgess cannot satisfy Rule 16(b)'s good cause standard, (2) Burgess' unduly delayed the filing of the SAC, (3) the SAC is futile, and (4) it would be prejudiced by Amendment.  As explained below, the Court disagrees, with exception that Count V of the SAC is futile.

### 1.      Standard of Review

Seeking leave to amend a pleading after a scheduling order's deadline has passed implicates two Federal Rules of Civil Procedure, Rule 15 and Rule 16. *See Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003).  Rule 15 provides that "[t]he court should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2).  Rule 16 requires the district court to enter a scheduling order that includes a deadline for amending pleadings and provides that a court can modify its scheduling order "only for good cause." Fed. R. Civ. P. 16(b)(3)(A) & (4). Interpreting the interplay between these two Rules, the Sixth Circuit has held that, notwithstanding Rule 15's directive to freely give leave to amend, a party seeking leave to amend after the scheduling order's deadline must first meet Rule 16's "good cause" standard in order for the district court to amend the scheduling order. *See*, *e.g.*, *Leary*, 349 F.3d at 909. "A court asked to modify a scheduling order for good cause 'may only do so if [a deadline] cannot reasonably be met despite the diligence of the party seeking the extension.'" *Marcilis v. Twp. of Redford*, 693 F.3d 589, 597 (6th Cir. 2012) (quoting *Leary*, 349 F.3d at 906). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp*, 281 F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)). Possible prejudice to the party opposing modification is another relevant consideration in the good cause analysis. *Id.*

If good cause is shown under Rule 16, the court then considers whether amendment is appropriate under Federal Rule of Civil Procedure 15.  As noted above, under Rule 15(a)(2), a district court should give leave for a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). "The thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982). "Nevertheless, leave to amend 'should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.'" *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)).

> **2.    Good cause exists under Rule 16(b) and Burgess did not unduly delay the filing of the SAC under Rule 15(a).**

In its Opposition, GCRTA argues that "Plaintiff's failure to address, let alone satisfy, the Rule 16(b) good-cause threshold is fatal to her motion."  (Doc. No. 28, PageID #1019.)  According to GCRTA, "Plaintiff could have expedited the process, requested early issuance, or sought leave to amend promptly after the EEOC charge was filed. Instead, she sat on her rights for more than eight months while the case moved forward, and then filed an amended complaint in December 2025 that pointedly omitted her anticipated federal claims."  (*Id.* at PageID #1020.)  And under Rule 15, GCRTA  argues that "Plaintiff's serial filings at the EEOC, the continued serial amended complaint strategy in federal court, and refusal to provide medical releases to gather relevant records are part of a continuing pattern to prolong, extend and drive up GCRTA's defense costs." (*Id.* at PageID #1021.)

First, Rule 16(b) is inapposite here.  As noted in this Court's April 7, 2026 minutes, "***counsel and the Court agreed*** that Plaintiff must filed her Motion for Leave to File Second Amended Complaint by May 1, 2026."  Based on the parties' agreement, the Court implicitly has already found

good cause to extend the pleading amendment deadline to May 1, 2026, and Burgess timely filed her Motion for Leave on April 30, 2026.  But regardless, Burgess independently has satisfied the good cause standard because she did not receive the EEOC's right to sue letter until after the pleading amendment deadline passed.  (Doc. No. 25-1, ¶ 25 ("On or about March 9, 2026, the EEOC issued Ms. Burgess a Notice of Right to Sue under federal law regarding GCRTA's termination of her employment").)  If Burgess had amended her complaint to add federal claims prior to the  December 19, 2025 amendment deadline, GCRTA certainly would have moved to dismiss those claims for failure to exhaust.  In other words, Burgess had to wait to get her right to sue letter before amending her complaint to add her federal claims.  And the Court finds Burgess' seven-week delay in receiving the right to sue letter and filing her SAC was not undue delay.  Thus, the Court finds Rule 16(b) does not prohibit amendment here.

### 3. Except for Count V, the SAC is not futile

If amending the complaint is 'futile,' the court need not grant a motion to amend. *See Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "An amendment is futile when, after including the proposed changes, the complaint still 'could not withstand a Rule 12(b)(6) motion to dismiss.'" *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022) (quoting *Rose v. Harford Underwriters Ins. Co*., 203 F.3d 417, 420 (6th Cir. 2000)).  In other words, when a defendant opposes a plaintiff's motion to amend under Rule 15 as futile, the court looks to the "substance of the proposed amendment" to determine if the proposed amended complaint could withstand a Rule 12(b)(6) motion to dismiss. *See Beydoun*, 871 F.3d at 469 (quoting *Roskam Baking Co., Inc. v. Lanham Machinery Co., Inc.*, 288 F.3d 895, 906 (6th Cir. 2002)).

GCRTA argues that the SAC as a whole is futile because it is "facially defective" and it is

preempted by O.R.C. § 4117.10(A).  GCRTA also argues that the election of remedies doctrine renders the SAC futile.  GCRTA also makes specific futility challenges to Counts II, V, VI and VII of the SAC.  Except for Count V, the Court finds that amending the SAC would not be futile.

### i.    The SAC is not facially defective

GCRTA asserts that there are two counts in the SAC labeled as "Count VI" and this, supposedly, "creates fundamental ambiguity about the number, identity, and sequencing of the claims being asserted."  (Doc. No. 38, PageID #1022.)  According to GCRTA, "[a] pleading that cannot clearly identify its own causes of action does not meet the plausibility standard" under *Twombly* and *Iqbal*.  (*Id.*)  The Court will not spill any ink on this argument—it is patently frivolous and is rejected.

### ii.    The new claims are not preempted by O.R.C. § 4117.10(A)

GCRTA argues that "[b]ecause that predicate question arises from and depends on the CBA's progressive discipline framework and management rights provisions (CBA Art. 11), the new federal claims are preempted to the same extent as the accommodation claim, and any amendment to add them would be immediately subject to the same motion to dismiss."  (Doc. No. 28, PageID #28.)  For the same reasons stated above, the Court finds that Burgess' new claims do not require an analysis of the CBA, and that there is no clear and unmistakable language waiving Burgess' right to file her new statutory claims in federal court.  Thus, the SAC is not preempted by O.R.C. § 4117.10(A).

### iii.    The election of remedies doctrine does not render the SAC futile

GCRTA argues that "Plaintiff's active participation in the ongoing arbitration bars her from simultaneously asserting the proposed new federal claims."  (Doc. No. 23, PageID #1023.)  As support, GCRTA cites "*State ex rel. Shimola v. City of Cleveland*, 70 Ohio St.3d 40, 43 (1994)" for the proposition that "[i]t is the settled policy of Ohio law that a party may not pursue inconsistent remedies."  (*Id.* at PageID #1024.)  It asserts that "[p]ermitting both proceedings to run

19

simultaneously creates precisely the risk of inconsistent results that the election-of-remedies doctrine exists to prevent" and that "[t]he proposed new federal claims, which arise from the same disciplinary event and the same termination, are subject to immediate dismissal on this ground — making amendment futile regardless of the merits of the claims themselves." (*Id.*)

The Court first addresses GCTRA's reliance on *Shimola*.  First, "*State ex rel. Shimola v. City of Cleveland*" is not found at "70 Ohio St.3d 40" as cited by GCRTA.  That citation is to *State ex rel. Hopkins v. Indus. Comm'n of Ohio*, 70 Ohio St.3d 36, 635 N.E.2d 1257 (Ohio 1994).  And that case was a workers' compensation case that has nothing to do with parties pursing inconsistent remedies.  Second, "*State ex rel. Shimola v. City of Cleveland*" is a real case, which can be found at 70 Ohio St.3d 100, 637 N.E.2d 325 (Ohio 1994).  But *Shimola* involved the entry of default judgment and there was no discussion of whether the plaintiff was pursuing inconsistent remedies.[5]

Regardless, the election-of-remedies doctrine has no application here.  "For an election of one remedial right to bar the pursuit of another, the right elected must be inconsistent with the other and the election made with knowledge and purpose."  *Cincinnati Indus. Mach. v. Vmi Holland Bv*, No. 1:09-CV-604, 2012 U.S. Dist. LEXIS 206883, at *36–37 (S.D. Ohio Aug. 15, 2012) (citing *Frederickson v. Nye*, 144 N.E. 299, 303 (Ohio 1924)).  Stated differently, "[t]he of election of remedies is applicable only where, at the time of election, there are available to the litigant for the assertion of a single right, two or more coexisting remedies which are repugnant to and inconsistent

---

[5] This citation bears the hallmarks of a hallucinated case citation.  Given GCRTA's other frivolous arguments in their Opposition, the Court strongly suspects that AI was used to draft the Opposition.  This undersigned has issued sanctions in the past for Rule 11 violations related to improper AI use.  *Safe Choice, LLC v. City of Cleveland*, No. 1:24-cv-02033-PAB, 2025 U.S. Dist. LEXIS 214410, at *11–12 (N.D. Ohio Oct. 30, 2025).  GCRTA is expressly warned that the undersigned will not hesitate to do so again in this case if further briefing contains frivolous arguments and hallucinated case citations.  This remains true even if these were merely human errors made without the use of AI.

20

with each other." *Beckett v. Warren*, 921 N.E.2d 624, 628 (Ohio 2010) (quoting *Norwood v. McDonald*, 52 N.E.2d 67 (1943)).  Here, a finding of whether GCRTA had the authority to either suspend or terminate Burgess under the CBA is not "repugnant to and inconsistent with" whether GCRTA discriminated and/or retaliated against Burgess.  This is obvious.  While an adverse employment action may be presented as a legitimate, non-discriminatory decision (e.g. the employer had just cause under a CBA to suspend or to terminate an employee), that decision may have been pretextual.  Further, if Burgess prevails at the arbitration that does not automatically mean that GCRTA discriminated and/or retaliated against her.

Simply put, the arbitration of the CBA is distinct from the claims presented in this case.  The Court finds that the election of remedies doctrine does not render the SAC futile.

### iv.      Count VI of the SAC is not futile

GCRTA argues that Count VI (titled "Title I of the Americans with Disabilities Act (Termination of Employment)") is futile.  GCRTA argues that "the ADA does not provide disabled employees immunity from lawful workplace discipline." (Doc. No. 28, PageID #1024.)  GCRTA, relying on an arbitration transcript, which is not attached to the SAC, argues that "the record here reflects documented, serious safety violations: Plaintiff, while on a DML, or Last Chance Agreement, nearly derailed her multi-ton train by splitting a switch on April 15, 2025, and had persistent, recurring failures to communicate over the radio with dispatch — a safety-critical function for a rail operator." (*Id.* at PageID #1025.)  GCRTA, relying on the 2022 MOU, which is also not attached to SAC, argues that "Plaintiff has not alleged — and cannot allege — that she satisfied the eligibility prerequisites for the accommodation she claims she was denied" and that "even a facially plausible accommodation request is legally unreasonable if it conflicts with the CBA's seniority system." (*Id.*

21

at PageID #1025–26.)

GCRTA's arguments fail because a Rule 12(b)(6) challenge is generally restricted to the pleadings.  "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). Neither the arbitration transcript nor the MOU are referred to in the SAC.  The Court accordingly cannot consider them on a Rule 12(b)(6) challenge.  *Gross v. Pac. Life Ins. Co.*, No. 1:25-cv-01278-PAB, 2026 U.S. Dist. LEXIS 83542, at *29 (N.D. Ohio Apr. 16, 2026) (Barker, J.); *Garrett v. Morgan Cnty. Sheriff's Off.*, 792 F. Supp. 3d 771, 795 (N.D. Ohio July 25, 2025).  Therefore, the Court finds that Count VI is not futile.

### v.      Count VII of the SAC is not futile

GCRTA next argues that Count VII (titled "Title I of the Americans with Disabilities Act (Retaliation)") is futile.  GCRTA argues that "GCRTA had documented, independent, non-retaliatory grounds for the DML — specifically, the April 15, 2025 switch-splitting incident and persistent radio communication failures — that are entirely separate from any protected activity."  (Doc. No. 28, PageID #1027.)  It further argues that "permitting the proposed retaliation count to proceed would create precisely the forum-splitting problem that compels dismissal of the existing claims."  (*Id.*)

As with Count VI, the Court's review at this stage is limited to the pleadings, and it cannot consider GCRTA's alleged non-retaliatory grounds for her termination.  *Bassett*, 528 F.3d at 430. And even so, Burgess would still have the opportunity to present evidence of pretext, and GCRTA has not argued that SAC fails to allege pretext.  Further, the Court has already rejected GCRTA's

22

"forum-splitting problem."  Therefore, the Court finds that Count VII is not futile.

### vi.  Count II of the SAC is not futile

GCRTA next argues that Count II (titled "Section 504") is futile because "[t]he EEOC does not administer the Rehabilitation Act; Section 504 employment claims follow standards mirroring the ADA but require exhaustion through different administrative channels" and because "Plaintiff has not established that the March 9, 2026 EEOC Right to Sue Notice authorizes the expanded Section 504 theories." (Doc No. 28, PageID #1027–28.)  GCRTA has not offered any legal authority for this argument—because it cannot.[6]

Section 504 of the Rehabilitation Act is codified as 29 U.S.C. § 794.  "[T]he Rehabilitation Act prohibits discrimination against the disabled by recipients of federal funding and requires reasonable accommodations to permit access to such recipient facilities and programs by disabled persons." *L.G. v. Bd. of Educ.*, 775 F. App'x 227, 230 (6th Cir. 2019) (quoting *Fry v. Napoleon Cmty. Schs.*, 788 F.3d 622, 633 (6th Cir. 2015) (Daughtrey, J., dissenting)).  The Sixth Circuit has found that "exhaustion of administrative remedies 'is not a prerequisite to private enforcement of section [794].'"  *Gean v. Hattaway*, 330 F.3d 758, 775 (6th Cir. 2003) (quoting *Tuck v. HCA Health Servs. of Tenn., Inc.*, 7 F.3d 465, 471 (6th Cir. 1993)); *see also Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 239–40 (6th Cir. 2019) ("For example, Title VII, Title IX, and § 504 do not require the exhaustion of administrative remedies before bringing a private cause of action, while the Age Discrimination Act does").  Simply stated, "[i]t is well-established . . . that Section 504 does not require exhaustion of an administrative remedy before bringing a cause action."  *Gibboney v. Univ. of Cincinnati*, No. 1:21-cv-00199, 2022 U.S. Dist. LEXIS 253628, at *8 (S.D. Ohio Aug. 15, 2022)

---

[6] It is clear GCRTA did not even attempt to research this issue before presenting it to the Court.

(citing *Doe*, 926 F.3d at 239–40); *Buescher v. Baldwin Wallace Univ.*, No. 1:13 CV 2821, 2014 U.S. Dist. LEXIS 65650, at \*16 (N.D. Ohio May 12, 2014) ("Defendants' motion seeking dismissal of the . . . Rehabilitation Act claim[] against BWU for failure to exhaust is denied").

For these reasons, the Court finds that Count II of the SAC is not futile.

### vii.    Count V of the SAC is futile

GCRTA argues that "[t]he proposed [SAC] pleads no facts specific to a sex-discrimination theory beyond the bare, conclusory allegation that Plaintiff was 'terminated because of sex.'" (Doc. No. 28, PageID #1028.)  GCRTA asserts that "[u]nder *Twombly* and *Iqbal*, a conclusory label attached to a facially disability-based employment dispute is insufficient to state a Title VII sex-discrimination claim, that was not claimed in the underlying administrative review, or charge affidavit." (*Id.*)

The Court agrees with GCRTA.  As recently explained by the Sixth Circuit:

> Plaintiffs asserting discrimination claims in federal court are not required to plead facts establishing a prima facie case in order to state a claim for relief. *Swierkiewicz*, 534 U.S. at 510; *Lindsay*, 498 F.3d at 439; *Keys*, 684 F.3d at 609. The requirement to show a prima facie case applies only to claims based on indirect evidence of discrimination and relates to the plaintiff's burden of presenting such evidence at the summary judgment and trial stages of litigation: it cannot be imposed to challenge a complaint. *Swierkiewicz*, 534 U.S. at 510-12; *Lindsay*, 498 F.3d at 439-40; *Keys*, 684 F.3d at 609. At the pleading stage, the ordinary rules for assessing the sufficiency of a complaint apply, *Swierkiewicz*, 534 U.S. at 511; *Pedreira*, 579 F.3d at 728, and the relevant inquiry on a motion to dismiss is whether a complaint contains sufficient facts to notify a defendant of the plaintiff's claims and support a reasonable inference that the defendant is liable for the misconduct alleged, Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *Fritz*, 592 F.3d at 722.

*Washington v. First Nat'l Bank of Pa.*, 179 F.4th 1008, 2026 U.S. App. LEXIS 18760, at \*17–18 (6th Cir. 2026).  Applying this standard, the *Washington* Court held that the plaintiffs' FHA discrimination claim was subject to dismissal under Rule 12(b)(6):

24

The Complaint generally alleges that the Washingtons are mixed race, Leon is a disabled veteran, they applied to FNB for a VA home loan in August 2020, FNB knew their race and Leon's disability status, and FNB never approved or denied their loan application despite assuring them that they were qualified. It specifically alleges that FNB once had an incorrect name on the loan application, twice provided the Washingtons with a disclosure statement that contained the wrong interest rate, mismanaged scheduling an appraisal, missed important closing deadlines, and generally refused to speak to the Washingtons on the phone with two exceptions. It also alleges that FNB repeatedly asked the Washingtons for the same materials and provided them with false and misleading information about the loan's status, Leon's credit history, and whether an appraisal of the home had been ordered, and that, eventually, the Washingtons applied to another mortgage lender who quickly granted them a VA loan.

The Washingtons assert that "but for" their race and Leon's disability, FNB would have approved their loan application and that FNB "does not subject white and other non-black and other non-mixed-race applicants to the same process foisted on" them. R. 7-1, PageID 71, ¶ 29, PageID 73, ¶ 40. But the Complaint does not contain any specific factual content regarding FNB's handling of other loan applications. Its conclusory assertion that FNB handles loan applications from individuals of other racial backgrounds differently therefore falls into the "category of naked assertions devoid of further factual enhancement" proscribed by the Supreme Court's opinions in *Iqbal* and *Twombly. Fisher v. Perron*, 30 F.4th 289, 298 (6th Cir. 2022) (citation modified).

Construing the Complaint in the light most favorable to the Washingtons and accepting all of its well-pleaded factual allegations as true, as we must, the Complaint does not contain sufficient facts to support a reasonable inference that FNB failed to approve or deny the Washingtons' loan application because of their race or Leon's disability. It therefore does not state plausible claims for relief under the FHA or Ohio's parallel law, and FNB was entitled to dismissal of those claims. *See Iqbal*, 556 U.S. at 678; *Fritz*, 592 F.3d at 722.

*Id.* at *13–14; *see also Guess v. Wireless Customer Sols., Inc.*, No. 3:25-cv-01079, 2026 U.S. Dist. LEXIS 155566, at *12 (M.D. Tenn. July 14, 2026) (following *Washington* and dismissing age, sex and national origin discrimination claims).

Here, the SAC contains even less detail than the allegations in *Washington*.  Burgess alleges "Defendant terminated Plaintiff's employment because of sex in violation of 42 U.S.C. § 2000e-2," (Doc. No. 25-1, ¶ 50) but provides no factual support for this legal conclusion.  There are simply no

facts in the SAC to support a reasonable inference that GCRTA terminated Burgess' employment because of her sex.  Accordingly, the Court finds that Count V of the SAC is futile.

### 4.  Amendment would not prejudice GCRTA

The Court next addresses GCRTA's argument that it would be prejudiced by amendment. GCRTA asserts that (i) "[t]he new federal claims introduce legal standards and evidentiary frameworks . . . that Defendant has not had the opportunity to conduct—and cannot adequately conduct if discovery is on a schedule built around the narrower existing claims,"  (ii) "[e]ach new federal count will require separate briefing on dispositive motions, duplicating legal research and argument on claims that Plaintiff could have—and should have—included in her First Amended Complaint," (iii) "[a]dding three federal claims—along with a substantially revised Section 504 count—would necessitate reopening or extending case management deadlines, delaying resolution for all parties and consuming judicial resources," and (iv) "[o]verlap in underlying facts does not eliminate the litigation burden of defending against additional legal theories, each with distinct elements and proof requirements." (Doc. No. 28, PageID #1029.)  GCRTA also asserts that "Plaintiff has spent the better part of two years systematically obstructing Defendant's efforts to obtain discovery into those very conditions, asserting a parade of meritless and contradictory objections to the most basic medical inquiries." (*Id.* at PageID #1030.)

The Court rejects GCRTA's arguments.  First, the SAC does not materially expand "the legal standards and evidentiary frameworks" at issue in this case.  The FAC contained state law claims related to Burgess' termination and the federal law claims related to her termination are evaluated under the same standards.  *See*, *e.g.*, *Lloyd v. Greater Cleveland Reg'l Transit Auth.*, No. 1:18-CV-01557, 2020 U.S. Dist. LEXIS 155826, at *17 (N.D. Ohio Aug. 27, 2020) ("Thus, courts often

26

analyze claims under the ADA and Ohio law together"). The parties have already been conducting discovery on her termination since the filing of the FAC. And Burgess adding new allegations to her Section 504 claim do not materially expand the scope of the case or the legal issues presented. Third, if amendment is denied here, Plaintiff can simply file her new federal claims as a separate lawsuit. Thus, regardless of the Court's decision today, GCRTA would have to "defend[] against additional legal theories, each with distinct elements and proof requirements." Fourth, Magistrate Judge Sheperd's June 16, 2026 Order indicates that the parties have resolved many of GCRTA's issues related to discovery, and that the parties are working on the remaining issues. For these reasons, the Court finds that GCRTA will not suffer undue prejudice by allowing the filing of the SAC.

For all these reasons the Motion for Leave is GRANTED. The SAC is deemed filed as of the date of this Memorandum Opinion and Order. Pursuant to Rule 12(b)(6), Count V is dismissed for failure to state a claim. GCRTA shall file its Answer to the SAC no later than seven days from the date of this Memorandum Opinion and Order.

### C.      The pleadings are now closed

This case has been pending for over two years and the pleadings have not closed. Given this delay, Burgess is advised that the Court will not consider any further amendments to the pleadings absent compelling circumstances such that justice requires amendment, and that good cause exists for such amendment. Fed. R. Civ. P. 15(a)(2); Fed. R. Civ. P. 16(b). GCRTA shall not file any additional Rule 12 motions concerning the pleadings. Should GCRTA have any additional Rule 12 arguments that have not been waived, it may raise them in its summary judgment motion.

## III.    Conclusion

For the reasons set forth herein, the Second Motion to Dismiss (Doc. No. 21) is DENIED and the Motion for Leave (Doc. No. 25) is GRANTED. The SAC is deemed filed as of the date of this

Memorandum Opinion and Order.  Pursuant to Rule 12(b)(6), Count V of the SAC is dismissed for failure to state a claim.  GCRTA shall file its Answer to the SAC no later than seven days from the date of this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

    *s/Pamela A. Barker*
    PAMELA A. BARKER
Date:  August 6, 2026    U. S. DISTRICT JUDGE